**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| JOSEPH SCOTT WALL | CIVIL ACTION NO. 05-1787 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| AMERICAN PRODUCTS CO.<br>AND THE PEP BOYS-MANNY<br>MOE & JACK, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court are two Motions for Summary Judgment. The first Motion for Summary Judgment, pertaining only to the issue of liability, was filed by the plaintiff, Joseph Scott Wall ("Wall"). See Record Document 23. The second Motion for Summary Judgment, pertaining only to the issue of indemnification, was filed by the defendant and cross-claimant, The Pep Boys-Manny Moe & Jack, Inc. ("Pep Boys"). See Record Document 25. American Products Co. ("APC") has filed no opposition to either of the Motions for Summary Judgment. For the reasons which follow, both Motions for Summary Judgment are **GRANTED**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND.**

During the summer 2004, Wall became interested in purchasing a Sport Cycle, which was distributed by APC and sold by Pep Boys Store on Jewella Avenue in Shreveport, Louisiana. See Record Document 23, Exhibit B. Because he did not have cash or credit to make the purchase, his friend, Jason Allgrunn ("Allgrunn"), agreed to charge the Sport Cycle on his credit card, with the agreement that Wall would pay him back. See id., Exhibits B & C. Wall selected a Sport Cycle, Allgrunn made the purchase on his credit card, and Wall received the Sport Cycle on the day it was purchased. See

id. The total cost of the Sport Cycle was $433.31. See id., Exhibits C & C1. Wall repaid Allgrunn for the original purchase price of the Sport Cycle. See id., Exhibits B & C.

Wall stated in his affidavit that from the date of purchase until September 18, 2004, the Sport Cycle was in his possession and/or locked away. See id., Exhibit B. Wall recalled that he had not removed the front brake caliper before September 18, 2004. See id. Further, before riding his Sport Cycle, Wall also used the tools provided with the Sport Cycle to insure that the nuts and bolts on the Sport Cycle were securely fastened. See id. Specifically, Wall stated that he "checked the nuts and bolts on the front axle of the Sport Cycle in accordance with the owner's manual instructions to verify they were tight before riding the Sport Cycle on or about September 18, 2004." Id. Likewise, Allgrunn, who also owned his own Sport Cycle, recalled that it was his and Wall's habit to verify that the nuts and bolts on the Sport Cycles were secure before riding their Sport Cycles. See id., Exhibit C.

On or about September 18, 2004, Wall was riding the Sport Cycle purchased from Pep Boys on a paved road in a trailer park in Caddo Parish and was involved in an accident. See id., Exhibit B. At this time, Wall weighed 217 pounds and was 22 years old. See id. Wall cannot recall the details of the accident, but does remember that he was in the vicinity of a speed bump and was not traveling more than ten miles per hour. See id. Wall does not recall if he hit the speed bump. During the accident, Wall was thrown over the handlebars striking the pavement with his face. See Record Document 1, ¶ 6. As a result of the accident, Wall received injuries to his forehead, nose, and mouth. See Record Document 23, Exhibit B. Specifically, he lost seven or eight teeth and will require at least seven permanent implants in his mouth. See id. Counsel for Wall also maintains that Wall

will need reconstructive surgery on his face.

The Sport Cycle at issue in this case was originally manufactured and packaged in China before being distributed in the United States by APC to Pep Boys. See id., Exhibit A-2. According to the Sport Cycle Owner's Manual, the maximum rider weight is 250 pounds, the Sport Cycle is designed to be ridden "off road," and the Sport Cycle is for person "ages fourteen and up." Id., Exhibit A-1.

Wall filed suit in the First Judicial District Court, Caddo Parish, Louisiana on September 6, 2005. See Record Document 1. Defendants APC and Pep Boys removed the case to federal court on October 12, 2005 and a removal order was entered on October 17, 2005. See Record Documents 3 & 7.

On August 16, 2006, Pep Boys filed a cross-claim against APC, seeking indemnification. See Record Document 21. On September 8, 2006, Wall filed a Motion for Summary Judgment on the issue of liability. See Record Document 23. On September 15, 2005, Pep Boys filed a Motion for Summary Judgment on the issue of indemnification. See Record Document 25. Pep Boys was dismissed from the principal demand on October 17, 2006. See Record Document 35. Therefore, Pep Boys remains in this action only as a cross-claimant, asserting an indemnification claim against APC. The only remaining defendant on the principal demand is APC.

## II.    LAW AND ANALYSIS.

### A.    Summary Judgment Standard.

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." F.R.C.P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th

Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511 (1986).

Again, both Motions for Summary Judgment in this case are unopposed. Wall and Pep Boys served on APC copies of their Motion for Summary Judgment on September 8, 2006 and September 15, 2006, respectively. To date, APC has not responded to either Motion for Summary Judgment. Local Rule 7.5W requires a respondent opposing a motion to "file a response, including opposing affidavits, memorandum, and such supporting documents as are then available, within 15 days of service of the motion." Clearly, APC failed to oppose either Motion for Summary Judgment within the required fifteen day period. Federal Rule of Civil Procedure 56 states the following:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**B.     Motion for Summary Judgment filed by Wall.**

Wall has made a claim under the Louisiana Products Liability Act ("the Act"), Louisiana Revised Statute 9.2800.51 et seq. Section 2800.52 states that "this Chapter establishes the exclusive theories of liability for manufacturers for damage caused by their

products." Specifically, Section 9:2800.53(1) defines manufacturer:

The following terms have the following meanings for the purpose of this Chapter:

(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

. . .

(d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. R.S. 9:2800.53. Under Section 2800.53(1)(d), the Court finds that APC is a manufacturer under the Act. APC was the importer of the Sport Cycle, a product made by an alien manufacturer, and distributed the Sport Cycle to vendors such as Pep Boys. See Record Document 23, Exhibit A-2. Under a vendor agreement, Pep Boys then sold the Sport Cycle as APC's product. See id. Further, information in the Owner's Manual, namely warranty information and the order form for replacement parts and accessories,[1]

---

[1]The warranty agreement set forth in the Owner's Manual states that "APC warrants . . . " and asks the consumer to contact APC to obtain repair or replacement. Record

supports the fact that APC was the alter ego of the alien manufacturer. See generally Andry v. Murphy Oil, U.S.A., Inc., 2005-0126 (La.App. 4 Cir. 6/14/06), 935 So.2d 239, 249; Matthews v. Wal-Mart Stores, Inc., 97-CA-0449 (La.App. 4 Cir. 3/11/98), 708 So.2d 1248, 1250-51.

APC, as the manufacturer of the Sport Cycle, is "liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant." La. R.S. 9:2800.54. The plain language of the Act demonstrates that Wall faces a two-tiered burden: he must show that (1) his damages were proximately caused by a characteristic of the product that renders it unreasonably dangerous, and (2) his damages arose from a reasonably anticipated use of the product. See Kampen v. American Isuzu Motors, Inc., 157 F.3d 306, 309 (5th Cir. 1998). If Wall's damages did not arise from a reasonably anticipated use of the product, then the "unreasonably dangerous" question need not be reached; therefore, the Court will address the reasonably anticipated use prong first. Id.

Reasonably anticipated use is defined in Section 2800.53(7) as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." The inquiry is an objective one and requires courts to ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture. See Kampen, 157 F.3d at 309. Under the Act, a manufacturer is not responsible for every conceivable foreseeable use of a product. See

---

Document 23, Exhibit A-1 at 11. Further, the consumer is directed to contact APC at a California address for replacement parts and accessories. See id. at 13, 15.

id. at 309-10.  Further, as stated by the Fifth Circuit, "under the [Act] and the cases interpreting it, when a plaintiff misuses a product, in direct contravention of a warning, his 'use' will not be reasonably anticipated unless the plaintiff can show that the manufacturer should have known that product users 'were using the [product] in contravention of certain warnings.'"  Kampen, 157 F.3d at 317, citing Lockart v. Kobe Steel Ltd. Const. Machinery Div., 989 F.2d 864, 868 (5th Cir. 1993).

Here, the Court notes that Wall was riding the Sport Cycle at a slow speed on a paved road within the confines of a trailer park at the time of the accident.  Under the heading "Safe Riding Information," the Owner's Manual states:

> Never ride the Sport Cycle on public streets, sidewalks, parking lots, highways, freeways, or at night.

Record Document 23, Exhibit A-1 at 3.  Again, under the "Caution!" heading, the manual again states:

> Do not ride on public streets, sidewalks, highways, freeways, or at nighttime.
> (For Off-Road Use ONLY)

Id. at 5.  Therefore, Wall's use of the Sport Cycle on a private paved road appears to be in contravention of a stated warning, and the Court must examine the summary judgment record to see if Wall has shown that APC knew or should have known that users of the Sport Cycle could use or were using the product in contravention of the aforementioned warnings.

Here, the Court finds that APC should have known that users of the Sport Cycle, despite warnings that the product was for off-road use only, would at times drive the Sport Cycle on or across paved roads, even if only for short distances.  In this case, Wall was riding his Sport Cycle on an interior paved road, as compared to a highway or freeway,

within his trailer park. Such a road does not necessarily qualify as what is commonly thought of as a "public street." Wall was not traveling a great distance on the paved road. He planned to stay within the confines of the trailer park while retrieving his mail. See Record Document 23 at 3. This Court must apply an objective standard. While APC is not responsible for every conceivable foreseeable use of a product, it should have reasonably expected that a motorized vehicle such as the Sport Cycle would be driven on or across a private paved road at a slow speed for limited purposes, such as retrieving mail inside a trailer park.

Because Wall has established that his damages arose from a reasonably anticipated use of the Sport Cycle, he must now satisfy Section 2800.56$^2$ and prove three elements. Again, Wall has alleged that the design of the front fork/axle assembly of the Sport Cycle was unreasonably dangerous. Therefore, he must first "prove that another way to design the [Sport Cycle] existed at the time the manufacturer placed the chosen design on the market." Johnson v. Black & Decker U.S., Inc., 29,996 (La.App. 2 Cir.

---

$^2$La. R.S. 9:2800.56 states:

A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

(1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

10/31/97), 701 So.2d 1360, 1363. Next, Wall "must prove that the alternative design was capable or would have been 'significantly less likely' than the chosen design to cause [his] complained of damages, or that the alternative design would have significantly reduced such damage." Id. Finally, he must show that, at the time the product left APC's control, the likelihood that the product as designed would cause his damages and the gravity of those damages outweighed the burden on APC of adopting the alternative design identified, and the adverse effect, if any, this different mode of design would have on the products utility. See id. This third requirement is referred to as the risk-utility balancing test. See id.

To establish that the design of the front fork/axle assembly of the Sport Cycle was unreasonably dangerous, Wall relies on the expert opinion of John F. Hawkins, Jr., P.E. ("Hawkins"), a licensed professional mechanical engineer. In his affidavit, Hawkins summarizes the contents of the expert report he prepared based on his personal observations of the Sport Cycle and his education, training and experience as a licensed professional mechanical engineer. See Record Document 23, Exhibit D. The affidavit states:

> [T]he sport cycle operated by Joseph S. Wall on September 8, 2004 failed as a result of a design defect in the sport cycle. It is my opinion that the vibration caused from riding the motorized sport cycle caused the bolts on the front axle to loosen and as a result of striking a bump or other similar irregularity in the road surface, the front wheel assembly slipped out of the slotted left fork arm causing the axle wheel assembly to twist the opposition (right) fork while the left fork skidded into the road surface. As the entire front wheel and axle assembly became separated from the front forks, the front forks skidded on the road surface, which resulted in the entire cycle rotating forward throwing Mr. Wall over the handlebars and on to the roadway.
> The use of slots on the front fork to attach the front axle assembly is inherently unsafe and therefore unreasonably dangerous. A simple cost

> effective alternative would be to install the single axle bolt through holes in the front forks instead of a slot. The use of holes in the front forks instead of a slot is a more robust design, is safer for the rider because the bolts have to completely back off the threaded axle before the axle can separate from the front forks causing an accident. This design does not effect [sic] the utility of the sport cycle and the cost would be no more and probably less expensive than the slotted design.

Id. Hawkins further stated in his report that "powered machines such as even the small Yamaha, intended for children riders, use the more robust and safer design." Id., Exhibit D at p. 2 of Report.

The Court finds that the uncontested affidavit and report of Hawkins satisfies the statutory requirements of Section 2800.56. Wall has proven that another way to design the front fork/front axle of the Sport Cycle existed at the time the manufacturer placed the chosen design on the market. He has also demonstrated that the alternative design, i.e., the use of holes in the front forks instead of a slot, was a more robust and safer design. The available alternative design would have significantly lessened the likelihood of the accident and resulting injuries. At a minimum, Wall has successfully shown that the alternative design drastically reduced the chances of this type of failure, so that the resulting accident would not have occurred. Hawkins' uncontested affidavit and report evidence that the front forks hole design does not negatively or adversely affect the utility of the Sport Cycle and the cost would be no more and probably less expensive than the slotted design used by APC. As stated by Wall, "a simple, more robust and secure method of attachment could be obtained by simply punching or drilling holes in the front forks instead of the slotted system used on APC's motorized Sport Cycle." Record Document 23 at 12. APC's discovery responses also demonstrate that two other individuals have made claims against APC for malfunction and/or failure of the front wheel assembly. See

id., Exhibit A-2, Answer to Interrogatory No. 11. Such claims relate to accidents that occurred in June and July 2004. See id. Moreover, based on the affidavit and report of Hawkins, the Court finds that the faulty design of the APC front forks on the Sport Cycle would have caused a similar accident whether the Sport Cycle was in use on a dirt road or a paved road.

Based on the foregoing, the Court finds that Wall has met his burden of establishing that the Sport Cycle's front fork/front axle design was unreasonably dangerous because a safer and more secure alternative design was readily available that would have been capable of preventing the accident and the resulting injuries. He has also established that the defect in the Sport Cycle was the proximate cause of his injuries. Accordingly, summary judgment in favor of Wall on the issue of liability under the Act is **GRANTED**.[3]

Wall has also moved for summary judgment on his claim for redhibition under

---

[3]The Act also provides defenses for manufacturers under Section 2800.59(A), which provides that a manufacturer of a product shall not be liable for damage proximately caused by a characteristic of the product's design if the manufacturer proves that, at the time the product left his control:

(1) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the design characteristic that caused the damage or the danger of such characteristic; or

(2) He did not know and, in light of then-existing reasonably available scientific and technological knowledge, could not have known of the alternative design identified by the claimant . . . ; or

(3) The alternative design identified by the claimant . . . was not feasible, in light of then-existing reasonably available scientific and technological knowledge or then-existing economic practicality.

La. R.S. 9:2800.59(A). Because APC has not opposed the Motion for Summary Judgment filed by Wall, it has not met its burden of establishing a defense under Section 2800.59(A).

Louisiana Civil Code Article 2520.[4] Under this theory, Wall is seeking return of the purchase price, including sales tax, of the Sport Cycle and an award of attorneys fees. See Record Document 23 at 15. Louisiana courts have held that the Act "was never intended to eliminate redhibition as a means of recovery against a manufacturer." Monk v. Scott Truck & Tractor, 619 So.2d 890, 893 (La.App. 3 Cir. 1993). Courts have reasoned that "the thinking of scholars . . . is that 'redhibition survives only for economic loss. To the extent that the damage is compensable in redhibition, it is not damage under the Act. Hence, the Act's exclusivity provision does not prevent recovery for economic loss in redhibition.'" Id. Despite this Court granting summary judgment in favor of Wall on his claim under the Act, he is also free to pursue his redhibition claim for recovery of the purchase price, including sales tax, of the Sport Cycle and an award of attorneys fees.

Wall argues, uncontested, that he would not have purchased the Sport Cycle if he known that only three months later the front wheel of the bike would have separated from the front forks, not only destroying the Sport Cycle but also injuring him. Further, he contends that no reasonable person would have anticipated that a motorized vehicle such as the Sport Cycle would be designed in such a way that the wheel would separate from

---

[4]La. C.C. Article 2520 states:

    The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
    A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.
    A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

the bike due to the vibration from the operation of such vehicle. Simply put, Wall argues, and based on the uncontested summary judgment evidence this Court agrees, that the defect in the design of the Sport Cycle's front fork/front axle rendered the Sport Cycle useless, or at the least, made the use of the Sport Cycle so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of such defect. See La. C.C. Art. 2520. Further, the record evidence supports the conclusion that the aforementioned defect in Sport Cycle existed at the time of delivery. See La. C.C. Art. 2530. Therefore, the Court finds that the existence of such a defect in the Sport Cycle gives Wall, the buyer, the right to obtain rescission of the sale. See id.

Further, this Court has ruled that APC was the manufacturer of the Sport Cycle and under Louisiana redhibition law, "a seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing." La. C.C. Art. 2545. Because APC is presumed to know of the defect in the design of the Sport Cycle's front fork/front axle, APC "is liable to [Wall] for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees." Id.; see also Frentress v. Howard, 31,609-CA (La.App. 2 Cir. 2/24/99), 728 So.2d 1019, 1022. Accordingly, Wall has established that the Sport Cycle as manufactured by APC contained redhibitory defects and is entitled to summary judgment on his claim for redhibition under Louisiana Civil Code Article 2520. Specifically, Wall is entitled to recovery of the purchase price, including sales tax, of the Sport Cycle and an award of

attorneys fees.[5]

### C. Motion for Summary Judgment filed by Pep Boys.[6]

There is no dispute that Wall purchased the Sport Cycle at issue in this case at the Pep Boys Store on Jewella Avenue in Shreveport, Louisiana. In connection with the sale of APC's motorcycles at the Pep Boys Store, APC and Pep Boys entered into a Vendor Agreement ("the Agreement") on or about February 18, 2004. See Record Document 26, Exhibit 2. The Agreement contains an "Indemnification" clause, which states:

> Vendor [APC] shall indemnify, defend and hold harmless Pep Boys, its affiliates and customers, and their respective officers, directors, agents and employees, from and against any and all claims, liabilities and expenses (including attorneys' fees and costs, increased and/or punitive awards) which result in whole or in part from any actual or alleged defect in any Merchandise (latent or patent) and/or the failure of the Merchandise to comply with the Assurances set forth above or any other express, implied or statutory warranties, whether or not any demand for payment is made to Vendor [Pep Boys] and/or any lawsuit is actually filed against Pep Boys.

Id., Exhibit 2 at 2, ¶ 6.

Notwithstanding the fact that Pep Boys was recently dismissed by Wall from the original demand, Wall's petition originally named Pep Boys as a defendant, thus forcing Pep Boys to defend against those claims and assert a cross-claim against APC. In the instant Motion for Summary Judgment, Pep Boys is seeking to invoke the aforementioned indemnification clause to recover its expenses, including attorneys' fees and costs, incurred in defending against Wall's claim and pursuing its cross-claim against APC.

---

[5]The exact amount of such award will be determined either during the trial on the issue of damages or by motion practice following the conclusion of the case.

[6]Again, Pep Boys was dismissed from the principal demand on October 17, 2006. See Record Document 35. Therefore, Pep Boys remains in this action only as a cross-claimant, asserting an indemnification claim against APC.

The interpretation of an indemnity clause is governed by the interpretation of contracts under Louisiana law. See Berry v. Orleans Parish School Bd., 2001-3283 (La. 6/21/02), 830 So.2d 283, 285; see also La. C.C. Arts. 2045-2057. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the intent of the parties." Id., citing La. C.C. Art. 2046. Further, Pep Boys has cited the Court to five cases in support of its contention that indemnification is appropriate in this instance. See Cox Communications v. Tommy Bowman Roofing, LLC, 2004-1666 (La.App. 4 Cir. 3/15/06), 929 So.2d 161; Star Enterprise v. American Mfrs. Mut. Ins. Co., 03-189 (La.App. 5 Cir. 5/28/03), 847 So.2d 717; Berry, 830 So.2d 283; Commander v. BASF Wyandotte Corp., 978 F.2d 924 (5th Cir. 1992); and Perkins v. Rubicon, Inc., 563 So.2d 258 (La. 1990). The Court finds the most guidance from Commander, wherein the Fifth Circuit interpreted an indemnification provision similar to the one at issue in the instant matter. In Commander, the indemnification clause provided that the contractor "agreed to defend and indemnify [the defendant] against claims for personal injury 'which occurr[ed] in any way, directly or indirectly, as the result of [c]ontractor's prosecution of the work.'" Commander, 978 F.2d at 926. Relying on the Louisiana Supreme Court's decision in Perkins, the Fifth Circuit held that the indemnification provision did not require fault of the contractor. See id. at 927. Rather, the provision required "only a presence test, a 'but for' causation test." Id. Therefore, the court held that "the stipulation that the plaintiffs would not have been exposed to the fumes but for the contractor's work satisfie[d] the presence test required by [the indemnification] provision of the contract." Id.

Here, the Court finds that the language of the aforementioned indemnity clause is

clear and unambiguous. While this Court has found that the Sport Cycle was defectively designed, under the indemnity clause, it is only necessary that the claim against Pep Boys resulted,[7] in whole or in part, from any actual or alleged defect in the Sport Cycle. This is simply not a case where Pep Boys could be *solely* responsible for Wall's injuries. Moreover, using the but for analysis set forth in controlling case law, indemnification is owed because but for the alleged defect in APC's Sport Cycle, there would be no claim against Pep Boys. Accordingly, Pep Boys is entitled to summary judgment on its indemnification claim against APC.[8]

## III. CONCLUSION.

Based on the foregoing, the Court finds that no genuine issues of material fact exist and that summary judgment is appropriate. Accordingly, the Motion for Summary Judgment (Record Document 23), pertaining only to the issue of liability, filed by Wall is **GRANTED**. The Motion for Summary Judgment (Record Document 25), pertaining only to the issue of indemnification, filed by Pep Boys is likewise **GRANTED**. The liability phase of the above-captioned matter is hereby closed. The case shall proceed only as to

---

[7]Pep Boys notes the definition of the word "result":

1. To spring, arise, or proceed as a consequence of actions, circumstances, premises, etc.; be the outcome.
2. To terminate or end in a specified manner or thing.
3. Something that happens as a consequence; outcome.

Webster's New Universal Unabridged Dictionary at p. 1642 (2003).

[8]Again, the exact amount of such award will be determined either during the trial on the issue of damages or by motion practice following the conclusion of the case.

the issues of Wall's damages and the amounts due under the indemnification clause of the Agreement.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 27th day of November, 2006.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE